# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MARGARET P. WEATHERLY,

       Plaintiff,

v.                           Case No:  8:16-cv-1269-T-27CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff Margaret P. Weatherly seeks judicial review of the denial of her claim for disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the Court recommends that the decision of the Commissioner be affirmed.

## I.    Issues on Appeal[2]

Plaintiff raises two issues on appeal: (a) whether the Administrative Law

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Judge ("ALJ") properly weighed the opinions of Plaintiff's treating psychiatrist, Elzbieta J. Chobot-Sochet, M.D. and (b) whether the ALJ properly concluded that Plaintiff is able to perform her past relevant work.

## II.   Procedural History and Summary of the ALJ Decision

On May 28, 2014, Plaintiff filed applications for disability, DIB and SSI alleging that she became disabled and unable to work on August 30, 2012.  Tr. 18, 94, 104, 223-28.   Plaintiff alleged disability due to depression, attention-deficit/hyperactivity disorder ("ADHD"), anxiety disorder, bipolar disorder and back disorders.  Tr. 94, 104.   Plaintiff's applications were denied initially and upon reconsideration.  Tr. 142-49, 153-64.  Plaintiff requested and received a hearing before ALJ Arline Colon on October 13, 2015.  Tr. 41, 191-95.  Plaintiff, who was represented by counsel during the hearing, appeared and testified in person at the hearing.  Tr. 41.  A vocational expert ("VE") also appeared and testified in person at the hearing.  *Id.*

On December 10, 2015, the ALJ issued a decision finding Plaintiff not disabled from August 30, 2012 through to the date of the decision.  Tr. 18-29.  At step one, the ALJ concluded Plaintiff did not engage in substantial gainful activity since August 30, 2012, the alleged onset date.  Tr. 20.  At step two, the ALJ found the claimant has the following severe impairments: disorders of the spine; chronic obstructive pulmonary disease; bipolar disorder, with mixed features and anxious distress; and cocaine and cannabis use disorders, with fragile sobriety.  Tr. 20-21. At step three, the ALJ found that Plaintiff "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21.

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work,

> except she can frequently, as opposed to constantly, climb ramps, stairs, ladders, ropes, or scaffolds. [Plaintiff] can frequently balance, kneel, and crawl, as well as occasionally stoop and crouch. She can tolerate occasional exposure to wetness and humidity, as well as occasional exposure to fumes, odors, dusts, gases, and poor ventilation. [Plaintiff] can tolerate occasional exposure to vibrations and occasional exposure to hazards, such as moving mechanical parts of equipment, tools, or machinery. She can perform more than simple tasks, but less than complex tasks.

Tr. 22. Next, the ALJ found that Plaintiff is capable of performing her past relevant work as an admitting officer and bakery worker. Tr. 28. Thus, the ALJ concluded Plaintiff has not been under a disability from August 30, 2012 through the date of the decision. *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on March 18, 2016. Tr. 1. Accordingly, the December 10, 2015 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on May 20, 2016. Doc. 1. This matter is now ripe for review.

## III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1),

423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.,* 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.  Discussion

### a. Whether the ALJ properly weighed the opinions of Plaintiff's treating psychiatrist, Elzbieta J. Chobot-Sochet, M.D.

On November 18, 2013, Anthony De Lucia, D.O., an emergency department physician, referred Plaintiff to Dr. Chobot-Sochet because Plaintiff experienced hopeless feelings and made self-hurting statements.  Tr. 724, 755.  On November 25, 2013, Dr. Chobot-Sochet began treating Plaintiff as Plaintiff's Mental Health Treatment Coordinator.[3]  Tr. 753.

On November 25, 2013, Plaintiff completed a form for a self-management plan. Tr. 752-53.  She indicated that situations or feelings causing her stress included anger, anxiety, depression, sadness, money problems, a feeling of loneliness, an anniversary of a trauma/loss, a feeling of hopelessness and a lack of sleep.  Tr. 752. She further noted that her warning signs of feeling stressed were crying, having sleeping problems, not eating at all, isolating from others, getting upset easily, using drugs or alcohol more, or feeling worthless and thinking of suicide.  *Id.*  To cope with stress, Plaintiff prayed and attended church, listened to music, talked to someone and counted her blessings.  *Id.*  She also had her sister and girlfriend to reach out to. *Id.*  Plaintiff noted that she had access to and could use pills, a knife and a gun to make a suicidal attempt.  Tr. 752-53.  At this time, Plaintiff had not identified any ways to limit her access to these items.  Tr. 753.

---

[3] Dr. Chobot-Sochet's treatment notes reveal that Plaintiff is a veteran, who was discharged from the Navy because of her sexual orientation.  Tr. 754.

During the initial visit on November 25, 2013, Dr. Chobot-Sochet noted that Plaintiff was attending school and was currently unemployed. Tr. 754. She further indicated that Plaintiff received education as an x-ray technologist and had good grades in school with no learning problems. *Id.* Plaintiff was studying ecology and doing well in school. *Id.* Plaintiff also stated that she had been in a relationship for six and one-half years. Tr. 754. Although Plaintiff felt that she would not be able to have gainful employment, Plaintiff denied having any problems in school or experiencing any abuse in her life. *Id.* Plaintiff also denied having any psychosis, obsessive-compulsive disorder, post-traumatic stress disorder or unspecified types of seasonal occurrences, despite having no normal periods of mood. Tr. 755.

Plaintiff stated that she was doing well until her mother died when she was thirty-two years old. *Id.* Plaintiff reported feeling depressed, hopeless, helpless and worthless and having poor sleep and motivations, although she had no psychosis. *Id.* Plaintiff stated that she then did not seek any help because she did not have any health insurance. *Id.* Plaintiff noted that at the age of thirty-seven, she experienced menopause and mood swings from having rage attacks and racing thoughts, sleeping poorly, staying in bed for one and one-half months, not eating, not taking care of herself and not participating in life. *Id.* Plaintiff tried Lexapro,[4] which made her much more agitated and irritable. *Id.* She also received estrogen for a short period of time, but stopped because of her family history of cancer. *Id.*

---

[4] Lexapro is an antidepressant used to treat anxiety and major depressive disorders. Drugs.com, https://www.drugs.com/lexapro.html (last visited July 14, 2017).

Dr. Chobot-Sochet found that Plaintiff experienced mood swings, racing thoughts, flights of ideas, irritability, inflated self-esteem, sleeping problems, poor concentration, hyper-talkativeness followed by "going down," poor motivation, feelings of hopelessness and helplessness, and poor appetite, despite having no psychosis. Tr. 756-57. The doctor also opined that Plaintiff had no periods or seasonal occurrences of stable mood. Tr. 757. Regardless, Dr. Chobot-Sochet noted that Plaintiff had not been hospitalized for her problems. Tr. 755. She further opined that Plaintiff had been hyperactive, hyper talkative, intrusive and restless with psychomotor hyperactivity. *Id.* Plaintiff's mood was irritable, anxious and down, and her affect was labile. *Id.*

Nonetheless, Plaintiff's affect was appropriate, and she was combed and clean. *Id.* Plaintiff's speech was coherent and relevant, although it was pressured with an increased productivity and indicated flights of ideas. *Id.* Plaintiff denied any suicidal or homicidal ideas and plans. *Id.* She also denied hearing voices or having delusions and was oriented to time, place and person. *Id.* Plaintiff's cognition was clear, and her judgment and insight were fair. *Id.*

Furthermore, Dr. Chobot-Sochet found that Plaintiff's lethality was low because she denied any suicidal ideas and plans. *Id.* Plaintiff stated that she had not tried to hurt herself, and her family had no history of suicides. *Id.* Plaintiff noted that she would not kill herself because of her religious faith. Tr. 756. Although Dr. Chobot-Sochet indicated that Plaintiff had risk factors such as mood and psychosocial problems, Plaintiff denied any violence against property and person.

*Id.* Plaintiff also denied any substance abuse, except occasionally smoking marijuana. *Id.* Dr. Chobot-Sochet indicated that Plaintiff had not been admitted to any psychiatric facilities. *Id.*

Furthermore, Plaintiff was complying well with taking several mediations including Divalproex,[5] although Plaintiff reported that Divalproex was ineffective and caused her diarrhea, vomiting and itching. *Id.* Plaintiff further expressed well her understanding of the medication education provided by Dr. Chobot-Sochet. *Id.* After noting that Plaintiff had psychosocial needs, Dr. Chobot-Sochet diagnosed Plaintiff with bipolar I disorder with mixed features and anxious distress. Tr. 757. Plaintiff's Global Assessment of Functioning ("GAF")[6] score was 49.[7] *Id.*

Dr. Chobot-Sochet prescribed Tegretol,[8] discontinued the prescription of Divalproex, directed Plaintiff to meet with a social worker, provided education on side effects of medications and recommended that Plaintiff consider a baseline MRI. *Id.* Plaintiff understood the benefits and side effects of medications and showed no barrier in communication. *Id.* The doctor asked Plaintiff to return in four weeks. *Id.* Dr. Chobot-Sochet also added that she would discuss with Plaintiff about

---

[5] Divalproex is used to treat the manic phase of the bipolar disorders and to prevent migraine headaches. Drugs.Com, https://www.drugs.com/cdi/divalproex-delayed-release-tablets.html (last visited July 17, 2017).

[6] GAF is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) ("DSM IV").

[7] A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *See* DSM IV.

[8] Tegretol is used to treat certain types of seizures and nerve pain. Drugs.com, https://www.drugs.com/tegretol.html (last visited July 17, 2017).

Plaintiff's urine test during the next visit because Plaintiff tested positive for cocaine and marijuana. *Id.*

Plaintiff next saw Dr. Chobot-Sochet on June 13, 2014. Tr. 842. Dr. Chobot-Sochet noted that Plaintiff was admitted to the Substance Abuse Treatment Program ("SATP") and was followed by Samuel A. Mendoza, M.D., a psychiatrist. Tr. 419, 842. Dr. Chobot-Sochet indicated that Plaintiff had cocaine-use disorder and "na tx."[9] Tr. 842. After summarizing Plaintiff's symptoms from the November 25, 2013 visit, the doctor indicated that Plaintiff started with Tegretol, which was "ns"[10] for two appointments. Tr. 842-43. Dr. Chobot-Sochet found that Plaintiff's lethality remained low. Tr. 843. Plaintiff also continued to deny any suicidal ideas and plans and any violence against property and person. *Id.* Dr. Chobot-Sochet noted that Plaintiff would be followed by the Domiciliary of the SATP and Dr. Mendoza after this visit. *Id.* Dr. Chobot-Sochet prescribed Risperidone[11] to Plaintiff upon her discharge. *Id.* Plaintiff made an appointment to see Dr. Chobot-Sochet on July 30, 2014, but missed this appointment. Tr. 667.

On August 20, 2014, Plaintiff had a follow-up appointment with Dr. Chobot-Sochet for Plaintiff's bipolar disorder and psychiatric interventions. Tr. 615. Dr. Chobot-Sochet indicated that Plaintiff had mood problems and mild hypomania

---

[9] Although the doctor did not specify what she meant by "na tx," it appears to indicate "no treatment." Tr. 842.

[10] Dr. Chobot-Sochet does not specify what she means by the abbreviation, which appears to mean "not significant." Tr. 843.

[11] Risperidone is antipsychotic medicine used to treat symptoms of bipolar disorder. Drugs.com, https://www.drugs.com/risperidone.html (last visited July 17, 2017).

bipolarity, which started after her menopause. *Id.* Plaintiff reported that cocaine and Sudafed[12] would bring her "down." *Id.* Dr. Chobot-Sochet also noted that Plaintiff took Risperidone, which caused Plaintiff's bronchospasm. *Id.* Risperidone also resulted in Plaintiff's respiratory and memory problems. *Id.* Plaintiff further stated that she could not tolerate Tegretol because it kept her up all night and caused diarrhea and nausea. *Id.* Nonetheless, Plaintiff reported that her mood swings stopped, although she was not taking medications. *Id.*

During this visit, Plaintiff questioned whether she had ADHD. *Id.* Dr. Chobot-Sochet also found that Plaintiff was pressured in her speech and had flights of ideas, poor sleep and anxiety. *Id.* Dr. Chobot-Sochet noted, however, that Plaintiff was "ok" in school and was able to concentrate. *Id.* Plaintiff's lethality remained low because Plaintiff continued to deny suicidal ideas and plans. Tr. 616. Plaintiff reported that she was not using drugs, started school, had good medical care and saw "a light in the end of the tunnel." *Id.* She further noted that she would get to Hud Wash[13] and Boley apartments and was currently in a Boley apartment. *Id.* Plaintiff also denied any violence against property and person and any substance abuse. *Id.*

---

[12] Sudafed is a decongestant used to treat nasal and sinus congestion. Drugs.com, https://www.drugs.com/sudafed.html (last visited July 17, 2017).

[13] "Hud Wash" appears to indicate the "HUD-VASH" program administered by the United States Department of Housing and Urban Development and the United States Department of Veterans Affairs, which provides low income housing and vouchers for veterans. HUD.GOV, https://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/vash (last visited July 17, 2017).

Dr. Chobot-Sochet found that Plaintiff had been cooperative and pleasant with no psychomotor agitation or retardation. Tr. 617. Plaintiff was kempt and clean, and her speech was coherent, relevant and goal-oriented. *Id.* Plaintiff had a normal, tranquil mood and appropriate affect. *Id.* She further had no suicidal or homicidal ideas. *Id.* She denied hearing voices or having delusions. *Id.* She was oriented to person, place and time. *Id.* Plaintiff also had clear cognition and good judgment and insight. *Id.* The results of Plaintiff's psychiatric evaluations stayed the same throughout her visits to Dr. Chobot-Sochet on January 16, 2015, March 25, 2015, April 17, 2015 and September 23, 2015. Tr. 1362, 1364, 1389, 1391, 1464-66, 1748.

On August 20, 2014, Dr. Chobot-Sochet diagnosed Plaintiff with unspecified bipolar and related disorder with mixed features and anxious distress onset after menopause and fragile sobriety, cocaine-use disorder, cannabis-use disorder and tobacco-use disorder. Tr. 617-18. She asked Plaintiff to call in four weeks and to return in eight weeks. Tr. 618. The doctor directed Plaintiff to continue with the HUD-VASH program, prescribed Hydroxyzine[14] for anxiety, provided education on medications and asked her to consider a baseline MRI. *Id.* Plaintiff understood the benefits and side effects of medications and showed no barrier in communication. *Id.* Plaintiff also reported that she was sober from substance abuse and would focus on school. *Id.* She further indicated that she enjoyed participating in the Intensive

---

[14] Hydroxyzine is used as a sedative to treat anxiety and tension. Drugs.com, https://www.drugs.com/hydroxyzine.html (last visited July 17, 2017).

Outpatient Program for Substance Abuse Disorder, which continued until the end of September 2014. *Id.* On September 19, 2014, Plaintiff declined a follow-up conversation with Dr. Chobot-Sochet because Plaintiff's mood was stabilized and improved with sobriety. *Id.*

Plaintiff returned to Dr. Chobot-Sochet on November 20, 2014. Tr. 496. Plaintiff reported that she was doing well with Hydroxyzine and felt sedated and calm. *Id.* Plaintiff also indicated that she did not use any substance, although she occasionally used some, but not an excessive amount, of marijuana medicinally for her anxiety. Tr. 496-97. Plaintiff stated that her mood was at a lower range, and she experienced oversleeping. Tr. 497. Dr. Chobot-Sochet found that Plaintiff's mind was racing, and her speech was pressured. *Id.* She further noted that Plaintiff found it difficult to be in a relationship and to handle stress. Tr. 498. The doctor opined that Plaintiff would not be able to hold gainful employment. *Id.*

In contrast, Plaintiff's psychiatric evaluation during this visit was substantially similar to the previous one from August 20, 2014, except that Plaintiff's speech was mildly pressured, and her mood was mixed, but "more down." Tr. 497-98. Plaintiff's speech was still coherent, relevant and goal-oriented, and her affect was appropriate. Tr. 498. Dr. Chobot-Sochet's diagnosis of Plaintiff also remained substantially unchanged, although she determined that Plaintiff's cocaine-use disorder had been in remission since July 2014 and cannabis-use disorder was "on and off to control anxiety." Tr. 499. The doctor directed Plaintiff to call in four weeks and return in twelve weeks. *Id.* The doctor also recommended to continue

with the HUD-VASH program, Hydroxyzine and sobriety with treatment tools learned. *Id.* In addition to making other plans for Plaintiff, Dr. Chobot-Sochet prescribed Lamotrigine[15] for mood problems and referred Plaintiff to therapy. *Id.* On October 10, 2014, Dr. Chobot-Sochet reviewed Plaintiff's laboratory results and found that Plaintiff had mildly elevated kidney function. Tr. 924.

On January 9, 2015, Dr. Chobot-Sochet reviewed Plaintiff's MRIs and determined that Plaintiff had no acute intra-cranial process. Tr. 919-20. Instead, she made non-acute incidental findings, such as non-specific soft tissue thickening within the posterior nasopharynx[16] at the midline. Tr. 919.

On January 16, 2015, Plaintiff had a follow-up appointment with Dr. Chobot-Sochet. Tr. 1464. Plaintiff reported that she had been anxious, tense and hyper-verbal and was immobilized by Lamotrigine. *Id.* Plaintiff noted that she would get easily agitated and impatient with others. *Id.* Dr. Chobot-Sochet found that Plaintiff also had pressured speech, a startled mood and a lack of restraint. *Id.* The doctor opined that Plaintiff would not be able to maintain gainful employment. *Id.* Dr. Chobot-Sochet indicated that she would try BuSpar[17] because Plaintiff's mood problems could be the result of anxiety rather than an affective disorder. *Id.*

---

[15] Lamotrigine is an anti-epileptic medication, which is also used to treat mood episodes. Drugs.com, https://www.drugs.com/mtm/lamotrigine.html (last visited July 17, 2017).

[16] The nasopharynx is the upper part of the throat behind the nose. healthline, http://www.healthline.com/human-body-maps/nasopharynx (last visited July 17, 2017).

[17] BuSpar is an anti-anxiety medicine. Drugs.com, https://www.drugs.com/buspar.html (last visited July 17, 2017).

Nonetheless, Plaintiff's psychiatric evaluation from this visit was again unremarkable. Tr. 1464-66. Plaintiff was participating in the HUD-VASH and the unspecified domiciliary programs and attended school and therapy sessions. Tr. 1465. Dr. Chobot-Sochet made several plans, including continuing with the HUD-VASH program, Hydroxyzine and sobriety with treatment tools learned, discontinuing the prescription of Lamotrigine, taking BuSpar, and going to therapy. Tr. 1466. The doctor asked Plaintiff to call in four weeks and to return in twelve weeks. *Id.*

Plaintiff briefly saw Dr. Chobot-Sochet on February 18, 2015. Tr. 1442. Plaintiff denied any psychosis, spending or grandiosity, although she was hyperactive, hyper-talkative, overfamiliar and impulsive and had pressured speech. *Id.* Plaintiff's lethality was low, and Plaintiff continued to deny any suicidal ideas or plans. *Id.* She also denied a feeling of hopelessness or any need for hospitalization. *Id.* Plaintiff stated that Hydroxyzine helped her, although she declined to increase its dosage because it made her sleepy. *Id.* She agreed to try Lithium.[18] *Id.* Plaintiff further did not exhibit any vegetative symptoms of depression. *Id.*

On March 25, 2015, Plaintiff had a follow-up appointment with Dr. Chobot-Sochet. Tr. 1389. Plaintiff reported that she had been calmer with Hydroxyzine, although her mood changed from being calm to emotional. *Id.* Plaintiff's lethality

---

[18] Lithium is used to treat manic episodes of bipolar disorder. Drugs.com, https://www.drugs.com/lithium.html (last visited July 17, 2017).

remained low, and Plaintiff continued to deny any suicidal ideas, violence against property and person or substance abuse. *Id.* Plaintiff's psychiatric evaluation was unremarkable and substantially similar to the previous one. Tr. 1391. Plaintiff continued to participate in the HUD-VASH and the domiciliary programs and was attending school and therapy sessions. *Id.* Along with other plans, Dr. Chobot-Sochet continued the prescription of Hydroxyzine, discontinued the prescriptions of Lithium and BuSpar and added Seroquel[19] for mood problems. *Id.* She directed Plaintiff to call in four weeks and return in twelve weeks. *Id.* Dr. Chobot-Sochet also conducted the Abnormal Involuntary Movement Scale ("AIMS") test for Plaintiff's symptoms of tardive dyskinesia.[20] Tr. 1391-93. Plaintiff's score was zero, indicating that she had no such symptoms. Tr. 1392.

On March 26, 2015, Dr. Chobot-Sochet spoke with Plaintiff. Tr. 1383. Plaintiff stated that Hydroxyzine helped her, but she started to "speed" after taking Seroquel. *Id.* Nonetheless, Plaintiff noted that she felt like a "new person." *Id.* Plaintiff stated that she was positive and had not felt this way in the past seven years. *Id.* Plaintiff was not hopeless or suicidal. *Id.* On March 27, 2015, Dr. Chobot-Sochet called Plaintiff. Tr. 1382. Plaintiff stated again that she was doing well and did not feel hopeless, helpless, worthless or suicidal. *Id.* She was positive and did

---

[19] Seroquel is an antipsychotic medicine used to treat bipolar disorder. Drugs.com, https://www.drugs.com/seroquel.html (last visited July 17, 2017).

[20] Tardive Dyskinesia is a side effect of antipsychotic medications, which causes stiff, jerky movements of a patient's body. WedMD, http://www.webmd.com/schizophrenia/guide/tardive-dyskinesia#1 (last visited July 17, 2017).

not need to take any more medications. *Id.* Her lethality remained low. *Id.* Plaintiff reiterated that she woke up "as a new person," because she did not have the feeling of "not being here" any more. *Id.*

On April 17, 2015, Plaintiff saw Dr. Chobot-Sochet. Tr. 1362. Plaintiff reported that her overall attitude was better, although she had low self-esteem and felt that she was not able to fit in any place since her discharge from the Navy. *Id.* She believed that her discharge disturbed her career and she was not worthy. *Id.* Regardless, Plaintiff's lethality remained low, and Plaintiff was still in school and the HUD-VASH program. *Id.* She denied any violence against property or person. *Id.*

The psychiatric evaluation from this visit was unremarkable. Tr. 1364. Dr. Chobot-Sochet noted that Plaintiff was able to increase the dosage of Seroquel to control her anger, lability, pressured speech and sleep problems. *Id.* Plaintiff continued to take Hydroxyzine and was sober from all substances. *Id.* Dr. Chobot-Sochet's diagnosis of Plaintiff remained unchanged. *Id.* She recommended that Plaintiff continue with the HUD-VASH program, Hydroxyzine for anxiety, Seroquel for mood problems, therapy sessions and sobriety with treatment tools learned. *Id.* The doctor also discontinued the prescriptions of Lithium and BuSpar. *Id.* She asked Plaintiff to return in three months. *Id.* In addition, Dr. Chobot-Sochet decreased the dosage of Seroquel. Tr. 1365.

Plaintiff last saw Dr. Chobot-Sochet on September 23, 2015. Tr. 1746. Plaintiff reported that she was very nervous, agitated, distressed, reactive to all of her problems and to her inability to function, anxious, tense, easily startled, restless,

nervous and depressed. Tr. 1747. She also noted that she had low energy and motivation. *Id.* She had been oversleeping and staying on the couch and had not taken a shower in two days. *Id.* Plaintiff was taking Hydroxyzine and Seroquel and had stopped taking Remeron.[21] *Id.* Plaintiff stated that although Remeron caused her to gain weight, it helped her depression, energy level and motivation. *Id.* Plaintiff reported that she had to smoke one-half a marijuana joint to fall asleep and calm down. *Id.*

Dr. Chobot-Sochet indicated that although Plaintiff's lethality was low, Plaintiff had risk factors such as mood and medical problems and a lack of finances. *Id.* Plaintiff still denied any violence against property or person. *Id.* On the other hand, Plaintiff's psychiatric evaluation was unremarkable and the same as the one from April 17, 2015. Tr. 1748. Plaintiff continued to participate in the HUD-VASH and domiciliary programs and attend school and therapy sessions. *Id.* Along with other plans, Dr. Chobot-Sochet continued the prescriptions of Seroquel for Plaintiff's mood and Hydroxyzine for Plaintiff's anxiety, discontinued the prescription of Remeron and added Wellbutrin.[22] Tr. 1749. The doctor asked Plaintiff to call in four weeks and to return in two months. *Id.*

In addition, on September 23, 2015, Dr. Chobot-Sochet provided the following letter:

---

[21] Remeron is an antidepressant used to treat major depressive disorder. Drugs.com, https://www.drugs.com/remeron.html (last visited July 18, 2017).

[22] Wellbutrin is an antidepressant medication used to treat major depressive disorder and seasonal affective disorder. Drugs.com, https://www.drugs.com/wellbutrin.html (last visited July 18, 2017).

[Plaintiff] has been follow[ing] up in MHC since 11/25/[2013] for Unspecified Bipolar and Related Disorder with mixed features and anxious distress onset after menopause and continued to be very nervous, agitated, distressed, reacting to inability to function, reacting to all problems, anxious, tense, easily startled, also depressed with low energy, low motivation, oversleeping, did not take a shower for 2 days, staying on the couch with partial response to Hydroxyzine and Seroquel. She stated that [s]he was ready to take Wellbutrin instead of Remeron on which she gained weight 15 pounds with no change of diet. She tried many other medications but had side effects such as agitation on Lexapro, diarrhea, vomiting and itching on Divalproex, agitation, diarrhea, nausea on Tegretol, respiratory and memory problems on Risperidone, low GFR on Lithium.

She had [a history] of head injury to frontal area but normal MRI but could contribute to intrusiveness, pressured speech, inability to deal with stress due to catastrophic reactions when something is not accomplished . She is not able to concentrate on one topic and task and she cannot get along with people.

She has not been employed since January 2013 when she was fired from Burger King due to complains of the management. She had many jobs in the past. Due to her psychopathology[, i]t is my professional opinion that she is unemployable now and in the future.

Tr. 1746.

In assessing Plaintiff's RFC, the ALJ considered and discussed in detail Dr. Chobot-Sochet's treatment notes. Tr. 23-24, 25, 27. The ALJ accorded little weight to Dr. Chobot-Sochet's opinion from January 16, 2015 that Plaintiff would not be able to maintain gainful employment. Tr. 27, 1464. She also gave little weight to the doctor's letter dated September 23, 2015. Tr. 27, 1746. The ALJ explained that the opinions regarding Plaintiff's employability are legal conclusions reserved for the Commissioner. Tr. 27. She further determined that Dr. Chobot-Sochet's assessments are inconsistent with the record because:

First, Dr. Chobet-Sochet has not indicated what she means by an inability to "maintain gainful employment." For that matter, the doctor has concluded [Plaintiff] cannot get along with people, though [Plaintiff] has had a girlfriend for many years, she routinely exhibited a cooperative mood to Ms. Federico and others, [Plaintiff] admitted she had never been fired in the past due to social issues, and she continues to succeed in school (with just *one* instance in three years). Likewise, [Plaintiff] continues to succeed in school and her pursuits of tuition assistance through the government, despite her doctor's opinion [Plaintiff] cannot concentrat[e] on even *"one* topic or task" (Emphasis Added).

Tr. 27.

Plaintiff argues that Dr. Chobot-Sochet's opinion does not support the ALJ's decision because Dr. Chobot-Sochet opined that Plaintiff is "unemployable now and in the future." Doc. 18 at 18. Plaintiff further asserts that the ALJ should have accorded great weight to Dr. Chobot-Sochet's medical opinions including, but not limited to, her opinion that Plaintiff is unemployable. *Id.* at 20. The Commissioner responds that the Court should deem Plaintiff's argument waived because Plaintiff does not address the ALJ's reasons for discounting the weight accorded to Dr. Chobot-Sochet's opinions. Doc. 19 at 7. The Commissioner claims that Plaintiff perfunctorily cites to general rules regarding treating source opinions. *Id.* Regardless, the Commissioner argues that the ALJ properly accorded little weight to Dr. Chobot-Sochet's opinions. *Id.* at 7-8.

The Court first recommends that the ALJ properly accorded little weight to Dr. Chobot-Sochet's opinion regarding Plaintiff's employability. Tr. 27. Opinions on some issues, such as whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* SSR 96-5p; *Hutchinson v. Astrue*, 408 F. App'x 324, 328 (11th Cir. 2011). Accordingly, Dr. Chobot-Sochet's opinion that Plaintiff would be unable to maintain gainful employment and is not employable is an issue reserved for the Commissioner. Tr. 27, 1464, 1746; *see* 20 C.F.R. §§ 404.1527(d), 416.927(d).

With regard to Dr. Chobot-Sochet's other opinions, the Court also recommends that the ALJ did not make any error. Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips,* 357 F.3d at 1241).

Pursuant to the proper legal standard, the ALJ discredited Dr. Chobot-Sochet's assessments because she found that they are inconsistent with the record. Tr. 27; *see Winschel,* 631 F.3d at 1179. As the ALJ explained in her decision, Plaintiff was in a relationship for six and one-half years and routinely exhibited pleasant and cooperative moods to treating professionals. Tr. 27, 617, 754, 1364, 1391, 1465, 1748. Plaintiff had not been ever fired or laid off from a job because of her problems getting along with other people. Tr. 27, 286. She continued to do well in school with only one instance of aggression in the last three years. Tr. 27, 754, 766, 1430, 1444. Plaintiff also applied for and received tuition assistance through the government. Tr. 27, 495.

Furthermore, the Court recommends that Dr. Chobot-Sochet's treatment notes support the ALJ according little weight to her opinions. Tr. 27; *see Winschel,* 631 F.3d at 1179. The treatment notes show Plaintiff's unremarkable psychiatric evaluations. On August 20, 2014, Dr. Chobot-Sochet noted that Plaintiff denied any violence against property and person. Tr. 616. Furthermore, Plaintiff had been cooperative and pleasant with no psychomotor agitation or retardation. Tr. 617. Plaintiff was kempt and clean, and her speech was coherent, relevant and goal-oriented. *Id.* Plaintiff had a normal, tranquil mood and appropriate affect. *Id.* She further had no suicidal or homicidal ideas. *Id.* She denied hearing voices or

having delusions. *Id.* She was oriented to person, place and time and had clear cognition and good judgment and insight. *Id.* Dr. Chobot-Sochet made the same findings on four other occasions: on January 16, 2015, March 25, 2015, April 17, 2015 and September 23, 2015. Tr. 1362, 1364, 1389, 1391, 1464-66, 1747-48.

In contrast, Plaintiff does not present any specific evidence other than Dr. Chobot-Sochet's opinion regarding employability to rebut the ALJ's finding. Doc. 18 at 17-18; *see Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). As a result, the Court recommends that the ALJ properly accorded little weight to Dr. Chobot-Sochet's assessments. Tr. 27.

> b. *Whether the ALJ properly concluded that Plaintiff is capable of performing her pas relevant work.*

Plaintiff argues generally that the ALJ should find a claimant disabled if the claimant cannot maintain full-time employment. Doc. 18 at 10-17. Plaintiff asserts that a claimant cannot work eight hours per day for five days per week if the claimant has to take many breaks during the day. *Id.* at 13-16. She also contends that the ALJ may not consider the claimant's self-reported daily activities because they bear no relationship to the claimant's employability. *Id.* at 16-17. In making her argument, Plaintiff refers to step five at which the burden shifts to the Commissioner, but she does not establish how this discussion or her argument applies to her case. Doc. 18 at 10; 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner responds that Plaintiff provides no specific evidence to prove her limitations beyond

the RFC or her inability to work on a regular and continuing basis. Doc. 19 at 8-9. The Commissioner argues that Plaintiff's conclusory suggestions are insufficient to merit remand. *Id.* at 9.

As noted, Plaintiff bears the burden of proving her disability and of presenting relevant evidence. *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Nonetheless, Plaintiff submits only general arguments without sufficient evidentiary proof and does not establish at all how her argument regarding taking breaks and step five relate to her claims here. Doc. 18 at 10-17.

Specifically, the Court recommends that Plaintiff's arguments regarding the Commissioner's burden at step five are not relevant here. Step four of the sequential evaluation process requires the ALJ to determine whether the Plaintiff's RFC allows her to perform any of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). Only if "a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Here, the ALJ did not make a step-five analysis because she found that Plaintiff is able to perform her past relevant work. Tr. 28; *see id.* Plaintiff does not at all contest this finding, and there is no step-five analysis available for the Court's review. Doc. 18; Tr. 28. Plaintiff makes, however, general arguments surrounding step five without explaining why the Court should consider them. Doc. 18 at 10-12, 15-16.

The Court further recommends that Plaintiff's argument the ALJ may not consider the claimant's self-reported daily activities equally is without merit. Doc. 18 at 16-17. In evaluating the severity of the claimant's mental impairments, the ALJ is required to rate the degree of functional limitation in four areas including activities of daily living. 20 C.F.R. § 404.1520a(c)(3) (2015). The ALJ is further required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, *daily activities*, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). In addition, the ALJ compares the claimant's statements with the objective medical evidence, *the claimant's daily activities*, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1545, 416.929(c)(1) (2015).

Here, the ALJ properly used the evidence of Plaintiff's subjective complaints and reported daily activities in assessing the severity of Plaintiff's mental impairments and the credibility of her subjective complaints. Tr. 21, 27. Plaintiff does not challenge any of the ALJ's specific findings regarding her mental impairments or RFC. Doc. 18; *see Access Now*, 385 F.3d at 1330 ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). Neither does she address relevant law governing the ALJ's use of Plaintiff's daily activities. Doc. 18 at 16. Thus, the Court recommends that Plaintiff's argument the ALJ erred is without merit. Tr. 28.

V. **Conclusion**

Upon review of the record, the undersigned recommends that the ALJ applied

the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    The decision of the Commissioner be **AFFIRMED**.

2.    The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 31st day of July, 2017.


CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record